UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUNRO AND ASSOCIATES, INC.,

    Plaintiff,

v.                                              CIVIL NO. 05-72224
                                              HON. LAWRENCE P. ZATKOFF

HUTHWAITE GROUP, L.L.C. d/b/a
INSTITUTE FOR LEAN DESIGN and
W. BARTON HUTHWAITE,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 16, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment, and Defendants' Motion for Summary Judgment, both filed on February 6, 2006. Both parties have filed responses and replies. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral

argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiff, Munro and Associates, is a consulting firm that provides services designed to help companies improve their profits. Plaintiff works with its clients to improve the efficiency of their procedures and product designs. Plaintiff provides consulting services in a wide variety of fields, including the automotive, medical devices, and electronics industries. Plaintiff alleges that it adopted the "Lean Design" mark in connection with its services in January 1999. Plaintiff first submitted the mark to the United States Patent and Trademark Office ("PTO") in July 2002. In July 2003, the PTO refused registration of the "Lean Design" mark because "the proposed mark merely describes the services." Def. Exh. 8. In January 2004, Plaintiff submitted a response to the PTO, arguing that the mark should be considered suggestive, not merely descriptive. In February 2004, The PTO again refused registration, and characterized its decision as a final action. Def. Exh. 11.

Plaintiff then amended its application to seek registration for the "Lean Design" mark on the Supplemental Register.[1] On December 28, 2004, the "Lean Design" mark was registered on the Supplemental Register. Plaintiff registered "Lean Design" as a service mark with the Michigan Department of Labor and Economic Growth on August 10, 2004.

---

[1] A mark listed on the Principal Register is entitled to a presumption that it is not merely descriptive. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1118 (6th Cir. 1996). The requirements for listing a mark on the Supplemental Register are not as stringent as those for the Principal Register. However, marks on the Supplemental Register do not receive the presumptions that marks on the Principal Register do. 15 U.S.C. § 1094.

Plaintiff currently uses the mark for its website, www.leandesign.com, its marketing materials, and seminars and workshops. Plaintiff alleges that the "Lean Design" mark signifies to the public that the associated products and services come from Munro.

Defendants, the Huthwaite Group and its president, W. Barton Huthwaite, offer consulting services similar to Plaintiff's. In 2004, Defendants published a book entitled Lean Design Solution. Defendants use the name "Institute for Lean Design," and own the website www.leandesign.org. Plaintiff filed suit on June 6, 2005, alleging that Defendants' use of the Lean Design mark has created confusion in the marketplace about the origin of products and services associated with the mark, and constitutes infringement and unfair competition in violation of the Lanham Act and Michigan law. Both parties have filed motions for summary judgment.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its

motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

Plaintiff's complaint alleges that Defendants are liable for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), and Michigan common law. The analysis for these counts is substantially the same. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604-05 (6th Cir. 1991).

**A.     Preliminary Evidentiary Issues**

Plaintiff notes that because Defendants did not seek cancellation of the "Lean Design" mark, and did not raise the genericness issue in their answer, they are now barred from asserting that the "Lean Design" mark is generic. In turn, Defendants argue that Plaintiff's evidence should be barred because Plaintiff did not make the initial disclosures required by Federal Rule of Civil Procedure 26(a). Defendants also claim that Plaintiff's evidence constitutes inadmissible hearsay and may not be considered by the Court.

Plaintiff has not provided any legal support for the proposition that genericness is an affirmative defense that must be specifically raised in an answer to prevent waiver. In addition,

*Marshak v. Green*, 505 F. Supp. 1054 (S.D.N.Y. 1981), the case cited by Plaintiff regarding Defendants' failure to seek cancellation, noted that "in general, neither opposition to registration nor a petition for cancellation under 15 U.S.C., section 1064, is a prerequisite to a cancellation counterclaim in an infringement action." *Id.* Thus, the Court finds that Defendants have not waived the genericness issue.

Regarding the discovery issues raised by Defendants, Plaintiff responds that it did provide initial disclosure. Plaintiff argues that was Defendants who did not provide initial discovery or timely responses to Plaintiff's requests. Plaintiffs also argue Defendants did not produce Defendant Huthwaite for a deposition. The Court notes that neither party filed any motions during the discovery period challenging the sufficiency of disclosures. At the end of the discovery period Defendants filed a motion for an extension. However, the Court denied the motion, agreeing with Plaintiff that any delay in discovery was due to Defendants' inaction. Opinion and Order, January 12, 2006. For purposes of the instant motions, the Court will consider the evidence of both Plaintiff and Defendants.

Finally, the Court finds Defendants' arguments concerning the admissibility of Plaintiff's evidence unpersuasive. The Court agrees that any hearsay evidence in Sandy Munro's deposition testimony is inadmissible, and it will not be considered for purposes of the instant motions. However, Plaintiff's exhibits also include press releases and corporate promotional and training materials. As Plaintiff points out, Defendants' own exhibits contain the same types of materials. The Court will consider the exhibits of both Plaintiff and Defendants.

**B.     Merits of Plaintiff's Claims**

*1.     Genericness*

Defendants argue that the "Lean Design" mark is generic. If so, Plaintiff does not have a valid, protectable mark, because "[a] generic term can never function as a trademark." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 404 (6th Cir. 2002). The determination of whether a mark is generic turns on whether the mark is best characterized as a "common descriptive" or as "merely descriptive." The Sixth Circuit has noted that a "'merely descriptive' mark, as opposed to a 'common descriptive' one, is often said to identify a characteristic of the thing. It is very similar to an adjective." *Id.* In contrast, a "common descriptive", or generic, term "is one that is commonly used as the name of a kind of goods . . . [it] merely identifies the genus of which a particular product is a species." *Id.* (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986)).

The "test for genericness is whether the [relevant] public perceives the term primarily as the designation of the article." *Id.* (quoting *Blinded Veterans Ass'n v. Blinded Veterans Foundation*, 872 F.2d 1035, 1041 (D.C. Cir. 1989). To show genericness, a party may use "dictionary definitions, newspapers and other publications, generic use by competitors, generic use of the term by the mark's owners, and use of the term by third parties in trademark registrations. *Id.* at 406. In *Nartron Corp.*, the Sixth Circuit affirmed summary judgment for the defendants on the basis of genericness because:

> [The defendants] provided undisputed deposition testimony from third-party participants in the semiconductor industry, including manufacturers and distributors. They provided testimony that manufacturers, customers, suppliers, vendors, and others in the semiconductor industry, including the trade and technical press, use the term "smart power" generically to mean power devices that have control circuits.

*Id.*

In the instant case, Defendants have produced several exhibits purportedly showing that the "Lean Design" mark is generic. Defendants point to an office action issued by the PTO indicating that the mark "appears to be generic." Def. Exh. 8. In response, Plaintiff notes that the PTO subsequently allowed the "Lean Design" mark to be registered on the Supplemental Register. Generic marks are not eligible for registration on the Supplemental Register.[2]

Defendants have produced an entry from the Langevin Learning Services Training Directory, which defines "Lean Design" as "[t]he minimalist approach to training design. Only the minimal amount of content required for the learner to do the task is built into the program." Def. Exh. 19 at 21. In addition, Defendants have produced a training presentation from Delphi Steering, an automotive engineering company, that uses the term "Lean Design Best Practices." Def. Exh. 22. Defendants have also produced promotional materials from three other companies that use the term "Lean Design." Def. Exhs. 23-25.

Defendants note that the term "Lean Design" is composed of two generic words, "lean" and "design." Defendants also point to an internet search using the Google search engine that returned 9,690,000 results. Def. Exh. 26.

These last two arguments are without merit. Words that are generic standing alone may form a valid mark when used in conjunction. *See Blinded Veterans Ass'n*, 872 F.2d at 1041; *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 981 (3d Cir. 1993). The internet search is of negligible evidentiary value. Based on the way the search was constructed, any document containing the word

---

[2]Registration on the Supplemental Register is relevant to rebut the earlier opinion of the PTO that the "Lean Design" mark may be generic. However, as discussed above, registration on the Supplemental Register does not give rise to any presumption that the mark is valid. *See* 15 U.S.C. § 1094.

7

"lean" and the word "design" would be returned, regardless of the relationship of the two words to each other.

Defendants' strongest argument is the Langevin Learning Services Training Dictionary, which provides a definition of the term "Lean Design." Dictionary definitions can be used to show a term is generic. *Nartron Corp.*, 305 F.3d at 406. However, the Langevin Dictionary is clearly not a general purpose dictionary. It is only 45 pages long, and contains primarily technical terms relating to teaching and instruction. Of course, this does not prevent the Langevin Dictionary from constituting relevant evidence of genericness. The dictionary may in fact be very strong evidence of genericness. Defendants, though, have provided no testimony regarding the intended users of the dictionary, and for what purpose it is used. Without a context, the dictionary cannot be considered definitive evidence that the relevant public considers the term "Lean Design" to be generic.

Likewise, Defendants' examples of other companies' usage of the term "Lean Design" does not prove the term is generic as a matter of law. Defendants have not provided any testimony directly demonstrating that those companies understand the term to be generic. Plaintiff argues that the examples may in fact be instances of "fair use." 15 U.S.C. § 1115(b)(4) provides that parties may use a registered mark if the use consists of "a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." Because the examples may represent descriptive fair use, rather than an acknowledgment that the term "Lean Design" is generic, they do not constitute definitive evidence that the term "Lean Design" is generic.

In *Nartron Corp.*, the Sixth Circuit upheld summary judgment for the defendant where the defendant produced undisputed testimony from manufacturers, distributors, vendors, customer, and the trade and technical press that the term in question was generic. *Nartron Corp.*, 305 F.3d at 406.

Defendants in the instant case have not made a comparable showing. While Defendants have provided examples of third-party usage of the term "Lean Design," they have not produced direct evidence from third parties indicating that the term is generic. Thus, Defendants are not entitled to summary judgment on this issue.

Likewise, neither is Plaintiff entitled to summary judgment on the issue of genericness. Plaintiff has produced news articles showing that the term "Lean Design" is associated with a methodology developed by Plaintiff. Plaintiff's Exhs. 8, 9. Plaintiff has also produced materials from two third-party companies, Code Constructs and Rolls-Royce, that indicate "Lean Design" is a methodology associated with Plaintiff. Plaintiff's Exhs. 6, 7. However, this evidence is insufficient to prove as a matter of law that the relevant public primarily perceives the term "Lean Design" to be a designation of Plaintiff's services.

As noted above, Defendants have produced evidence of third-party companies using the term "Lean Design" with no reference to Plaintiff's services. It is not the Court's role to weigh competing evidence at the summary judgment stage. *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 959 (6th Cir. 2005). The Court finds that there is a genuine issue of material fact regarding whether the term "Lean Design" is generic, and summary judgment on that issue is therefore precluded.

**B.     Secondary Meaning**

Assuming arguendo that the "Lean Design" mark is not generic, and merely descriptive, the Court must determine whether there is a genuine issue of material fact regarding whether the mark has acquired secondary meaning. "A merely descriptive mark can only be protected if the owner can show that the term [has] developed a 'second meaning' -- that the public identifies the trademark

9

with a particular 'source' rather than the product." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988).

The Sixth Circuit uses a seven-factor to test to determine whether a mark has acquired secondary meaning:

(1) direct consumer testimony;

(2) consumer surveys;

(3) exclusivity, length and manner of use;

(4) amount and manner of advertising;

(5) amount of sales and number of customers;

(6) established place in the market; and

(7) proof of intentional copying.

*DeGidio v. West Group Corp.*, 355 F.3d 506, 512 (6th Cir. 2004).

Plaintiff argues that direct consumer testimony demonstrates that the "Lean Design" mark designates services provided exclusively by Plaintiff. However, while Plaintiff has provided examples of the term "Lean Design" used in conjunction with Plaintiff's services in news articles and third-party company materials, only one of those examples indicated that "Lean Design" exclusively designated Plaintiff's services. Plaintiff's Exh. 6. In addition, Defendant has provided numerous examples of third-party companies using the term "Lean Design" with no reference to Plaintiff's service. Thus, this factor weighs in favor of Defendants.

Neither party has produced any consumer surveys. Regarding exclusivity, length and manner of use, Plaintiff argues that it has used the "Lean Design" mark continuously since 1999 to identify its business consulting services. Plaintiff prominently uses the mark in its advertising and

seminar materials. Plaintiff argues that Defendants are the only other company to offer business consulting service under the "Lean Design" mark.[3] While Defendants have provided examples of third-party companies using the term "Lean Design," Defendants have not shown that any other company offers business consulting services under the "Lean Design" mark. Thus, this factor weighs slightly in favor of Plaintiff.

Plaintiff argues it they spent "hundreds of thousands" of dollars on advertising the "Lean Design" mark, but it has not provided any documentary evidence supporting this claim. In addition, there is no specific evidence regarding the exact nature and effect of the advertising. The Sixth Circuit has held that the plaintiff's advertising must be extensive, and result in consumer association of the product or service with a single source in order to establish secondary meaning. *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989). Advertising done to "merely survive" in the competitive market is not sufficient to establish secondary meaning. *Id.* Thus, this factor weighs in favor of Defendants.

Plaintiff argues that sales from "Lean Design" brand services total millions of dollars, and its customer base is spread out over numerous industries. Defendants have not contested these assertions. This factor weighs slightly in favor of Plaintiff.

Plaintiff argues that it has an established place in the market, based on the fact that it is the only company, apart from Defendants, to offer business consulting services under the "Lean Design" mark. Plaintiff claims that competitors in the relevant market have acknowledged that the "Lean

---

[3] There is no evidence regarding when Defendants first began to use the "Lean Design" mark. Defendants' book Lean Design Solution was published in 2004, and Defendants' web site www.leandesign.org was also created in 2004. In their motion for summary judgment, Defendants do not deny that Plaintiff began using the mark first.

11

Design" mark is exclusively owned by Plaintiff. However, Plaintiffs have produced no evidence, other than Sandy Munro's testimony, to support this claim. This factor is inconclusive.

Finally, Plaintiff claims that Defendants intentionally copied the "Lean Design" mark. The Sixth Circuit has held that intentional copying is strong evidence of secondary meaning. *Ferrari v. Roberts*, 944 F.2d 1235, 1239 (1991). An intent to infringe may be shown by circumstantial evidence. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 603 (6th Cir. 1991). Plaintiff alleges that Defendants had prior knowledge of Plaintiff's use of the "Lean Design" mark, as they frequently crossed paths in the market place, and worked together on one occasion. Defendants have not denied this allegation. The Sixth Circuit has held that "the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997). This factor weighs in favor of Plaintiff.

The Court finds that there is a genuine issue of material fact regarding whether the "Lean Design" mark has acquired secondary meaning. Some of the factors favor Plaintiff, and some Defendants. As noted above, the Court may not weigh the evidentiary strength of each parties' position. Furthermore, neither parties' position is overwhelming so as to warrant judgment as a matter of law. Thus, summary judgment on this issue is precluded.

**C.      Plaintiff's Claims Pursuant to 15 U.S.C. §§ 1114, 1117(c)**

*1.      § 1114*

Defendants claim that because "Lean Design" is registered on the Supplemental Register, Plaintiff may not bring an trademark infringement claim pursuant to 15 U.S.C. § 1114. This assertion is incorrect. Defendants rely on *Goscicki v. Custom Brass & Cooper Specialties, Inc.*, 229

F. Supp. 2d 743 (E.D. Mich. 2002).  However, *Goscicki* held that *trade dress* must be registered on the Principal Register to receive the protection of § 1114.  *Id.* at 747.  Trademarks registered on the Supplemental Register are protected under § 1114.  *See Feathercombs, Inc. v. Solo Products Corp.*, 306 F.2d 251, 257 (2d Cir. 1962).

   *2.     § 1117(c)*

Finally, Defendants claim that Plaintiffs are not entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).  This section of the Lanham Act provides for statutory damages "[i]n a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d))."  A "counterfeit mark" is defined by § 1116(d) as "a counterfeit of a mark that is registered on the principal register."  Because the mark "Lean Design" is not registered on the Principal Register, Defendants have not used a "counterfeit mark," as defined by § 1116(d), and thus are not liable for damages pursuant to § 1117(c).  Defendants are entitled to summary judgment on this issue.

## V.  CONCLUSION

For the above reasons, Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

   IT IS SO ORDERED.


                              s/Lawrence P. Zatkoff
                              LAWRENCE P. ZATKOFF
                              UNITED STATES DISTRICT JUDGE

Dated:  May 16, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 16, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290